FILED
COURT OF APPEALS
DIVISION II

2014 DEC 16 AM 8: 31

STATE OF WASHINGTON

BY_____
DEPUTY

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44279-5-II |
| Respondent, | |
| v. | |
| VERNE LEE JACKSON, | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, J. — Jackson appeals his convictions for first degree child rape and first degree child molestation. He argues that his public trial right was violated when preemptory and for cause challenges were conducted at a private sidebar conference, and that his right to be present at trial was violated because he was not present at the sidebar conference. Jackson also asserts additional arguments in his statement of additional grounds (SAG).

We hold that (1) the trial court did not violate Jackson's public trial right regarding peremptory juror challenges because those challenges do not implicate the public trial right, (2) Jackson cannot show that his public trial right was violated regarding for cause juror challenges because he has not provided a sufficient record to demonstrate that a party actually challenged jurors for cause at sidebar, and (3) Jackson's right to be present was not violated because he was present in the courtroom during the entire jury selection process and he had the opportunity to join his counsel at the sidebar

conference. We also reject Jackson's SAG assertions. Accordingly, we affirm Jackson's convictions.

## FACTS

In 2010 a child disclosed that Jackson, who had babysat him on at least two occasions, had engaged in sexual touching and sexual acts with him. The State charged Jackson with first degree child rape and first degree child molestation.

Voir dire took place in open court, during which time the parties individually questioned potential jurors. During a mid-morning break in open court the parties made for cause challenges based on the jurors' oral answers during voir dire. These challenges were made on the record while Jackson was present in the courtroom. The court dismissed four jurors for cause. These dismissals were marked on the struck juror list.

Voir dire continued in the afternoon and the parties again questioned jurors in open court. After the conclusion of voir dire, the trial court announced that it would be starting the process of selecting the jury. Counsel for both parties then held a sidebar conference with the trial court. The trial court did not conduct a *Bone-Club*[1] analysis before convening the sidebar.

The sidebar conference was not recorded, and neither the trial court nor counsel ever stated on the record what had occurred in the conference. Counsel for both parties apparently made peremptory challenges, and the struck juror list shows which party made the challenges and in what order. The struck juror list also shows that two more jurors – jurors 10 and 32 – were dismissed for cause. But the record does not disclose whether either party made for cause

---

[1] *State v. Bone-Club*, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995).

challenges of those two jurors or whether the trial court merely announced that it had dismissed them sua sponte. Jackson was not present at the sidebar conference, although he was in the courtroom.

After the sidebar conference, the trial court announced the jurors who would be seated on the jury. The trial court did not announce in open court which jurors had been subject to peremptory challenges or dismissed for cause, but the struck juror list reflecting that information was filed with the court clerk that same day.

The jury found Jackson guilty as charged. Jackson appeals his convictions.

## ANALYSIS

### A. PUBLIC TRIAL RIGHT

Jackson argues that his public trial right was violated when counsel was allowed to make peremptory juror challenges and two jurors were dismissed for cause during a sidebar conference. We disagree.

#### 1. Legal Principles

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee a defendant the right to a public trial. *State v. Wise*, 176 Wn.2d 1, 9, 288 P.3d 1113 (2012). In general, this right requires that certain proceedings be held in open court unless the trial court first considers on the record the five-factor test set forth in *State v. Bone-Club*, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995) and finds the factors justify a closure of the courtroom. Whether a courtroom closure in fact occurred and whether a courtroom closure violated a defendant's right to a public trial are questions of law we review de novo. *Wise*, 176 Wn.2d at 9, 12.

The threshold determination when addressing an alleged violation of the public trial right is whether the proceeding at issue even implicates the right. *State v. Sublett*, 176 Wn.2d 58, 71, 292 P.3d 715 (2012). "[N]ot every interaction between the court, counsel, and defendants will implicate the right to a public trial or constitute a closure if closed to the public." *Id.*

To address whether there was a court closure implicating the public trial right, we employ a two-step process. *State v. Wilson*, 174 Wn. App. 328, 335-37, 298 P.3d 148 (2013). First, we consider whether the particular proceeding at issue "falls within a category of proceedings that our Supreme Court has already acknowledged implicates a defendant's public trial right." *Id.* at 337; *see also Wise*, 176 Wn.2d at 11. Second, if the proceeding at issue does not fall within a specific protected category, we determine whether the proceeding implicates the public trial right using the "experience and logic" test our Supreme Court adopted in *Sublett*. *Wilson*, 174 Wn. App. at 335.

The experience and logic test requires us to consider (1) whether the process and place of a proceeding historically have been open to the press and general public (experience prong), and (2) whether access to the public plays a significant positive role in the functioning of the proceeding (logic prong). *Sublett*, 176 Wn.2d at 73. If the answer to both prongs is yes, then the defendant's public trial right "attaches" and a trial court must consider the *Bone-Club* factors before closing the proceeding to the public. *Id.* at 73.

2.     Peremptory Juror Challenges

Jackson argues that the trial court violated his right to a public trial by allowing peremptory juror challenges to be made at a sidebar conference. We held in *State v. Dunn*, 180 Wn. App. 570, 321 P.3d 1283 (2014) and again in *State v. Marks*, No. 44919-6-II, 2014 WL

6778304, at *3 (Wash. Ct. App. Dec. 2, 2014) that exercising peremptory challenges does not implicate the public trial right. Accordingly, we hold that the trial court did not violate Jackson's public trial right by allowing counsel to make peremptory challenges at a sidebar conference.

### 3. For Cause Juror Dismissals

Jackson argues that the trial court violated his public trial right by allowing counsel to make for cause juror challenges at a sidebar conference. We disagree because Jackson has not provided a sufficient record for us to determine what happened at the sidebar conference. Jackson's inability to show that either party actually challenged jurors 10 and 32 for cause at sidebar precludes us from finding a public trial right violation.

Division Three of this court in *State v. Love* held that the exercise of for cause juror challenges during a sidebar conference did not violate the defendant's public trial right. 176 Wn. App. 911, 919, 309 P.3d 1209 (2013). However, this division has not yet addressed whether for cause juror challenges implicate the public trial right. In this case, we need not decide whether a party's for cause challenges or argument on those challenges implicates the public trial right.

Here, the record does not show that the State or Jackson actually challenged jurors 10 and 32 for cause at the sidebar conference. A party's challenge is not the only way a juror can be dismissed for cause. Under RCW 2.36.110, the trial court has a duty to excuse any juror who, in the opinion of the judge, is unfit to serve as a juror for one of several reasons, including "conduct or practices incompatible with proper and efficient jury service." Here, the trial court may have decided during voir dire questioning of jurors 10 and 32 – which was done in open court – that they should be dismissed under RCW 2.36.110, and then merely announced that decision to counsel at the sidebar conference.

5

The question therefore becomes whether a trial court's *announcement* to counsel of its decision dismissing jurors under RCW 2.36.110 implicates the public trial right. Our Supreme Court has not held that the trial court's juror dismissals must be announced in open court. Therefore, we must apply the experience and logic test to determine if the public trial right applies. *Sublett*, 176 Wn.2d at 73.

The experience and logic test does not suggest that the trial court's announcement of sua sponte juror dismissals implicates the public trial right. Regarding the experience prong, the dismissals of jurors 10 and 32 here were "announced" in writing on a document that was filed in the public record. We are aware of no authority indicating that this procedure is improper, or that a trial court's act of announcing juror dismissals historically has been open to the public. Regarding the logic prong, the public would not play a significant positive role in the functioning of the trial court's *announcement* of juror dismissals. Therefore, we hold that a trial court's announcement that it is dismissing jurors sua sponte does not implicate the public trial right.

If one or both of the parties had made for cause juror challenges at the sidebar conference and the parties argued those challenges, the public trial right may have been implicated. On the other hand, if the trial court here merely announced at the sidebar conference that it was dismissing jurors 10 and 32, the trial court did not violate Jackson's public trial right. The problem here is that the record does not disclose what happened at the sidebar conference with regard to the two jurors who were dismissed for cause.

Our Supreme Court in *State v. Koss* held that the defendant bears the responsibility to provide a record showing that a court closure has occurred. ___ Wn.2d ___, 334 P.3d 1042, 1047-48 (2014). Similarly, the plurality opinion in *State v. Slert* held that the defendant has the

6

burden of providing an adequate record to establish a violation of the public trial right, and in the absence of an adequate record a court will not infer that the trial court violated the constitution. ___ Wn.2d ___, 334 P.3d 1088, 1093 (2014).

Here, Jackson has not provided us with a sufficient record to determine whether what happened at the sidebar conference would implicate the public trial right. As a result, we will not assume that the trial court violated that right. Accordingly, we reject Jackson's argument that the trial court violated his public trial right with regard to for cause juror challenges.

## B.    RIGHT TO BE PRESENT

Jackson argues that the trial court violated his federal constitutional right to be present at trial when it allowed counsel to conduct for cause and preemptory juror challenges at a private sidebar conference. We assume without deciding that the right to be present attached, but hold that the right was not violated.

### 1.    Legal Principles

Under the Sixth and Fourteenth Amendments to the United States Constitution, a criminal defendant has a fundamental right to be present at all "critical stages" of trial. *State v. Irby*, 170 Wn.2d 874, 880, 246 P.3d 796 (2011).[2] Our Supreme Court has recognized that jury selection is a critical stage of trial to which the right to be present attaches. *Id.* at 883-84. The court reasoned that the selection of the jury is the primary mode through which the defendant is secured a free and impartial jury. *Id.* at 884. Further, the court stated that the right to be present

---

[2] The right to be present also is guaranteed by article I, section 22 of the Washington State Constitution, but Jackson does not explicitly argue that his rights were violated under this provision. Therefore, we need not address this issue.

attaches when the work of impaneling the jury begins, which in that case was when the prospective jurors were sworn and completed questionnaires. *Id.*

However, a defendant's right to be present is not absolute. *Id.* at 881. A defendant does not have the right to be present if his/her presence would be useless or not beneficial. *Id.*

We review the question of whether a trial court violated a defendant's right to be present at trial de novo. *Id.* at 880.

2. Right to Be Present Not Violated

We assume without deciding that juror challenges may constitute a critical stage of trial to which the defendant's right to be present attaches. However, we hold that Jackson's right to be present was not violated because he was present in the courtroom during the entire jury selection process and he had the opportunity to join his counsel at the sidebar conference.

Jackson relies on *Irby* to support his argument that his right to be present was violated. In *Irby*, the trial court gave the venire a questionnaire to fill out on the first day of jury selection without counsel present. 170 Wn.2d at 877. After the questionnaires were completed, the trial court then sent an email to counsel asking whether they would agree to dismiss 10 jurors for cause based on answers given in the questionnaires. *Id.* at 877-78. Defense counsel responded to the email and agreed to dismiss the jurors for cause. *Id.* at 878. The defendant was in custody at the time, and there was no evidence that the defendant was consulted before the jurors were dismissed. *Id.* at 884. Our Supreme Court held that this was a violation of the defendant's due process right to be present. *Id.*

Unlike the defendant in *Irby*, Jackson was present in the courtroom during all of voir dire, and therefore had the opportunity to hear all questioning that formed the basis for any future

8

challenges. Further, unlike the defendant in *Irby*, Jackson was present in the courtroom when counsel exercised peremptory challenges and when jurors 10 and 32 were dismissed for cause. Under these circumstances, Jackson had the opportunity to be involved in counsel's use of peremptory or for cause challenges. The sidebar conference did not deprive Jackson of the "power . . . to give advice or suggestion or even to supersede" his counsel. *Irby*, 170 Wn.2d at 883.

Similarly, this case is distinguishable from our decision in *State v. Slert*, 169 Wn. App. 766, 282 P.3d 101 (2012), *aff'd on other grounds*, ___ Wn.2d ___, 334 P.3d 1088 (2014).[3] In *Slert*, we found that the defendant's right to be present was violated when the trial court held an in chambers conference with counsel, outside the presence of the defendant, at which they discussed juror questionnaire responses and agreed to excuse four jurors for cause. 169 Wn. App. at 770-75. This court held that because the questionnaire responses were designed to elicit information with respect to the jurors' fitness to serve as jurors, they constituted a critical stage of jury selection proceedings analogous to the proceedings in *Irby*. *Id.* at 773-74. We found that this procedure violated the defendant's right to be present because jurors were dismissed for case-specific reasons and there was no record showing that defense counsel consulted with the defendant prior to agreeing to the dismissals. *Id.* at 775.

Here, unlike in *Slert*, Jackson was in the courtroom when all information regarding the jurors' fitness to serve was discussed in open court questioning. Further, unlike in *Slert*, Jackson

---

[3] The Supreme Court in *Slert* did not resolve the right to be present issue, and instead remanded to this court to address whether the violation of the right to be present constituted harmless error. 334 P.3d at 1093.

was present in the courtroom and witnessed counsel conduct the jury selection process, and there is no evidence that he did not have the opportunity to exercise his right to consult with his counsel.

We hold that the trial court did not violate Jackson's right to be present during jury selection proceedings.

C.     SAG ARGUMENTS

Jackson raises several additional errors in his SAG. While a defendant is not required to cite to the record or authority to support issues raised in his SAG, he must still "inform the court of the nature and occurrence of [the] alleged errors." RAP 10.10(c). We are not required to search the record to find support for defendant's claims. RAP 10.10(c). Jackson provides no arguments to support any of his alleged errors, and provides little context to assist the court in its review. Nevertheless, we attempt to address his SAG issues.

1.     Juror Bias

Jackson alleges that four members of the jury had "ties" to his sister. SAG at 1. He apparently claims juror bias. The Sixth and Fourteenth Amendments to the United States Constitution, as well as article I, section 22 of the Washington State constitution, guarantee a defendant the right to an impartial jury. *State v. Davis*, 175 Wn.2d 287, 312, 290 P.3d 43 (2012). A prospective juror must be excused for cause if the trial court determines that the juror is actually or impliedly biased. RCW 4.44.170; *Kuhn v. Schnall*, 155 Wn. App. 560, 574, 228 P.3d 828 (2010). We must presume that each juror sworn in is impartial; otherwise they would have been challenged for cause. *State v. Reid*, 40 Wn. App. 319, 322, 698 P.2d 588 (1985). A party

10

that accepts a juror without exercising its available challenges against the juror cannot later challenge that juror's inclusion on the panel. *Id.*

Jackson fails to indicate which jurors he alleges were biased, and fails to show that he objected to the inclusion of these jurors below. However, even if Jackson had challenged the jurors for cause below, he fails to provide the necessary support for his allegations of bias on appeal. A juror's acquaintance with a party, by itself, is insufficient to establish grounds for a for cause challenge. *State v. Tingdale*, 117 Wn.2d 595, 601, 817 P.2d 850 (1991). Jackson fails to point to any evidence in the record demonstrating that any of the jurors lacked the ability to be impartial. Accordingly, Jackson's challenge fails.

2. Failure to Understand Court Proceedings

Jackson asserts that he was not asked whether he could read or write and that he did not understand how the court works or the laws. However, this vague assertion "does not inform the court of the nature and occurrence of alleged errors," and therefore we need not consider it under RAP 10.10(c). There also does not appear to be any factual basis in the record for this assertion. Accordingly, we need not address it.

3. Right to a Speedy Trial

Jackson asserts that the trial court violated his right to a speedy trial. Before trial, the State indicated that the victim had disclosed new sexual acts and that the State was planning to file amended charging information. Jackson requested a continuance to prepare for the new charges and review the new evidence against him. Jackson indicated that he would waive his right to a speedy trial. Trial commenced within 90 days of this waiver.

11

A motion for a continuance made "by or on behalf of any party waives that party's objection to the requested delay." CrR 3.3(f)(2); *State v. Ollivier*, 178 Wn.2d 813, 823, 312 P.3d 1 (2013). Because Jackson requested the additional continuance, he is now prevented from challenging the delay on appeal.

4.    Failure to "Read Rights"

Jackson asserts that he was never read his rights until after the trial was over. However, this statement "does not inform the court of the nature and occurrence of alleged errors," and therefore we need not consider it under RAP 10.10(c). There also does not appear to be any factual basis in the record for this assertion. Accordingly, we need not address it.

5.    Ineffective Assistance of Counsel

Jackson alleges that his counsel's assistance was deficient in failing to address his competency and refusing his request for a polygraph test. His assertion that he did not understand the laws and how the court worked also could be considered an ineffective assistance of counsel claim.

However, a court reviewing an ineffective assistance claim raised on appeal may only consider facts contained within the record. *State v. Grier*, 171 Wn.2d 17, 29, 246 P.3d 1260 (2011). Claims relying on conversations with counsel that occur off the record must be filed in a personal restraint petition. *See id.* Jackson's assertions all rely on evidence outside the trial record. As a result, these challenges would need to be raised in an appropriately supported personal restraint petition, not a statement of additional grounds. *See id.* Accordingly, we reject Jackson's ineffective assistance of counsel arguments.

44279-5-II

We affirm Jackson's convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

WORSWICK, P.J.

LEE, J.

13