# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54022-3-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| ISAAC DEPRE FRAZIER, JR., | |
| Appellant. | |

MAXA, J. – Isaac Frazier, Jr. appeals his convictions on multiple charges and his standard range sentence. His convictions arose from two incidents: one in which Frazier broke into Austin Dunn's house and another a few days later in which Frazier shot Dunn and took a cell phone from Dunn's girlfriend.

We hold that (1) Frazier's argument that the trial court erred by allowing defense counsel to represent him at trial instead of allowing him to represent himself fails because the record is insufficient to determine why the court appointed defense counsel to represent Frazier at trial or whether Frazier objected, (2) sufficient evidence supports the first degree burglary conviction based on Frazier breaking into Dunn's home to commit a crime, (3) sufficient evidence supports the first degree robbery conviction based on Frazier taking the cell phone from Dunn's girlfriend through force or threat of force, and (4) the trial court did not err when it determined that an exceptional downward sentence was not justified based on Frazier's youthfulness.

Accordingly, we affirm Frazier's convictions and his sentence.

FACTS

*Background*

Frazier, who was 22 years old, first met Dunn when he went to Dunn's house to buy marijuana in late November 2017. The meeting was arranged by Jefferson Lopez-Marroquin, who regularly drank and smoked marijuana with Frazier and who had been friends with Dunn since high school. Lopez-Marroquin told Frazier that Dunn sold marijuana to him and that he always had marijuana available.

At some point after Frazier's first marijuana purchase from Dunn, Frazier asked Lopez-Marroquin if he was willing to rob Dunn for his marijuana. Lopez-Marroquin told Frazier no because Dunn had been his friend for too long.

*November 28 Incident*

Dunn lived with his girlfriend, Reiley Wynn. On November 28, Wynn came home from work and saw that the front door was open and damaged. The wood on the door was chipped and the deadbolt was still locked. The door had been shot where the deadbolt locked, and Wynn found two shell casings outside of the front door. Wynn also saw two bullet holes on the outside of the pantry and some blood on the counter and on one of the cupboards in the kitchen.

The police arrived and collected the bullet casings and swabbed the blood on the counter. The DNA profile from the blood swab matched a DNA profile obtained from Frazier.

*December 3 Incident*

On December 3, Lopez-Marroquin and Frazier decided to go to Dunn's house to get some marijuana. Dunn let Lopez-Marroquin and Frazier into his house. Frazier then pulled out a gun, pointed the gun at Dunn, and demanded that Dunn give him the marijuana and any money he had.

Wynn was in the garage when she heard yelling inside the house. She looked inside and saw Frazier holding a gun to Dunn's head and another gun pointed at Lopez-Marroquin. Wynn went back into the garage to call 911 on her cell phone. Before Wynn could call the police, she heard gunshots go off and she ran back into the house.

Wynn saw Frazier yelling at Dunn to "give it to me or I'm gonna f***ing shoot you." 2 Report of Proceedings (RP) at 513-14. Frazier then spotted Wynn and pushed her out of the house toward the garage. Frazier realized that Wynn had a cell phone in her hand. He pushed her and demanded that she give it to him. After Frazier took the cell phone from Wynn, he pushed her back out into the garage.

Dunn was shot in both legs and had open head wounds. He was transported to the hospital and survived his injuries.

The State charged Frazier with attempted first degree murder, first degree assault, two counts of first degree robbery, first degree unlawful possession of a firearm, and second degree unlawful possession of a firearm for the December 3 incident. In an amended information, the State also charged Frazier with first degree burglary, first degree unlawful possession of a firearm, and second degree unlawful possession of a firearm for the November 28 incident, and three counts of witness tampering for attempting to prevent Dunn, Wynn, and Lopez-Marroquin from testifying.

*Procedural Background*

In January 2018, the trial court appointed counsel to represent Frazier. This attorney continued to actively represent Frazier until February 2019, when Frazier requested to represent himself and to have the court appoint new standby counsel. The court engaged in a lengthy

colloquy with Frazier and granted his request. The court allowed Frazier's first appointed counsel to withdraw and agreed to appoint Jeff Barrar as Frazier's standby counsel.

Two weeks later, Frazier began being disruptive and nonresponsive in court at a motion hearing. The trial court subsequently ordered two competency evaluations. Barrar was appointed as Frazier's counsel for the limited issue of Frazier's competency evaluation. Frazier objected to Barrar being reinstated as his counsel. The court ultimately found Frazier competent to stand trial.

After finding Frazier competent to stand trial, the trial court engaged in another lengthy colloquy with Frazier before allowing him to continue to represent himself. Again Frazier was disruptive and nonresponsive and the court had difficulty getting Frazier to answer its questions. However, the court ultimately concluded that Frazier had a right to represent himself. Over Frazier's objections, the court reappointed Barrar as standby counsel. The court informed Frazier that Barrar would not be providing a defense, but was available to assist if Frazier requested help.

The trial court apparently reappointed Barrar as Frazier's trial counsel on June 13, 2019. However, the hearing in which Barrar was appointed is not in the record. Therefore, the record does not provide the court's basis for the reappointment or whether Frazier objected at that time. A few days later, the court granted Barrar's motion for appointment of co-counsel, Whitney Hawke.

*Jury Trial*

On the first day of trial, Hawke appeared with and spoke on behalf of Frazier. She stated that she had spoken to Frazier about a stipulation regarding various matters and that she believed

4

that he was deferring to her judgment. She also provide argument regarding the stipulation. Frazier did not object to Hawke's appearance on his behalf.

Frazier continued to act in a disruptive manner and ignored the trial court's warnings to cease his behavior or be removed from the courtroom. When Frazier's disruptive behavior continued, the trial court had Frazier removed from the courtroom before jury selection had begun. Frazier, along with Barrar, was placed in another room with video and audio feeds from the courtroom, which allowed him to hear and observe the proceedings. That arrangement continued throughout the entire trial.

Hawke represented Frazier at trial in the courtroom. At no time during the trial did Frazier object to Hawke and Barrar representing him at trial.

Wynn, and Lopez-Marroquin testified to the facts stated above. Dunn was unavailable to testify because he had passed away before trial had started. Frazier did not testify.

Wynn initially testified that she believed that the guns were still on Frazier at the time that he pushed her into the garage. On cross-examination, she stated that she could not remember if Frazier had a gun in his hand when he pushed her.

Regarding the November 28 incident, the jury found Frazier guilty of first degree burglary, but acquitted him of first and second degree unlawful possession of a firearm. Regarding the December 3 incident, the jury found Frazier guilty of first degree assault with a firearm enhancement; first degree robbery with a firearm enhancement; first degree unlawful possession of a firearm; and second degree unlawful possession of a firearm. The jury acquitted Frazier of a separate count of first degree robbery. The jury also found Frazier guilty of three counts of witness tampering.

*Sentencing*

At sentencing, Frazier and the State each argued for an exceptional sentence. Frazier sought an exceptional sentence downward based on youthfulness as a mitigating factor. The State sought an exceptional sentence upward based on the free crimes aggravating circumstance. The trial court's oral ruling regarding an exceptional sentence stated,

> At this time, I'm going to make a decision with regards to sentencing because it appears that all information has been presented. The Court can impose an exceptional sentence if there's a substantial and compelling reason to do so. The Court also has authority to go below the standard if mitigating circumstances are established by a preponderance of the evidence.
>
> In this Court's opinion, neither of those two things have occurred. So, the Court is going to impose a sentence within the standard range.

3 RP at 1246-47. The court sentenced Frazier to 399 months in confinement, a sentence within the standard range, which included 120 months in confinement based on two firearm enhancements.

Frazier appeals his convictions and his sentence.

## ANALYSIS

A.    RIGHT TO SELF-REPRESENTATION

Frazier argues that the trial court violated his right to self-representation by authorizing his standby counsel to represent him over his objections. We conclude that this argument fails because the record is insufficient to address this issue.

The trial court initially granted Frazier's request to represent himself. But at a hearing in June 2019, the court reappointed Barrar (who later associated with Hawke) to represent Frazier at trial. That hearing is not in the record. Therefore, we do not know the basis for the court's decision to reappoint defense counsel. We also do not know whether Frazier objected at that time, although the record is clear that Frazier did not object to defense counsel representing him

at the time of trial. Therefore, the record is insufficient to address Frazier's argument that the trial court violated his right to self-representation.

The party presenting an issue for review has an obligation to provide an adequate record to support his or her argument on appeal. *State v. Slert*, 181 Wn.2d 598, 608, 334 P.3d 1088 (2014). "In the absence of an adequate record, we will not infer that a trial judge violated the constitution." *Id.* Therefore, Frazier's self-representation fails based on insufficiency of the record.

B.      SUFFICIENCY OF THE EVIDENCE

Frazier argues that the State failed to present sufficient evidence to prove (1) first degree burglary, because the State did not present evidence that he unlawfully entered Dunn's residence on November 28 with the intent to commit a crime; and (2) first degree robbery, because the State did not present evidence that Frazier took the cell phone from Wynn through force or threat of force. We disagree for both convictions.

1.      Standard of Review

The test for determining sufficiency of evidence is whether any rational trier of fact could find all the elements of the charged crime beyond a reasonable doubt after viewing the evidence in a light most favorable to the State. *State v. Dreewes*, 192 Wn.2d 812, 821, 432 P.3d 795 (2019). We resolve all reasonable inferences based on the evidence in favor of the State and interpret inferences most strongly against the defendant. *Id.* at 821-22. The State's evidence is admitted as true and circumstantial evidence is considered as equally reliable as direct evidence. *State v. Scanlan*, 193 Wn.2d 753, 770, 445 P.3d 960 (2019), *cert. denied*, 140 S. Ct. 834 (2020). And we defer to the fact finder's resolution of conflicting testimony and evaluation of the evidence's persuasiveness. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014).

2. First Degree Burglary – Intent to Commit a Crime

A person commits first degree burglary if the person enters or remains unlawfully in a building with the "intent to commit a crime against a person or property therein" and is armed with a deadly weapon. RCW 9A.52.020(1). A person acts with intent to commit a crime "when he or she acts with the objective or purpose to accomplish a result which constitutes a crime." RCW 9A.08.010(1)(a).

Frazier essentially concedes that the evidence was sufficient to prove that he entered or remained unlawfully inside Dunn's house on November 28. He argues only that the State did not prove that he entered with an intent to commit a crime.

However, the evidence showed that (1) Frazier knew that Dunn kept marijuana at his house because Frazier had purchased some there, (2) Lopez-Marroquin told Frazier that Dunn always had marijuana available, (3) Frazier asked Lopez-Marroquin whether he was willing to rob Dunn for his marijuana and (4) a few days later on December 3 Frazier returned to Dunn's house to rob him of his marijuana. Viewing the evidence in the light most favorable to the State, a rational trier of fact could infer that Frazier broke into Dunn's house on November 28 with the intent to steal marijuana.[1]

Accordingly, we hold that there was sufficient evidence to prove that Frazier had the intent to commit a crime when he broke into Dunn's house on November 28.

3. First Degree Robbery

"A person commits robbery when he or she unlawfully takes personal property from the person of another or in his or her presence against his or her will by the use or threatened use of

---

[1] Frazier argues that the State could not use a permissive inference that a person unlawfully entering a building intended to commit a crime therein. But the State did not rely on such an inference and the jury was not instructed on such an inference.

immediate force, violence, or fear of injury to that person or his or her property or the person or property of anyone." RCW 9A.56.190. First degree robbery requires the State to prove that in the commission of the robbery the defendant was "(i) [] armed with a deadly weapon; or (ii) display[ed] what appear[ed] to be . . . [a] deadly weapon." RCW 9A.56.200(1)(a). To satisfy the element of use or threatened use of force, any modicum of force or threat that induces an owner to part with his or her property is sufficient. *State v. Truong*, 168 Wn. App. 529, 535, 277 P.3d 74 (2012).

Frazier argues only that the State failed to prove the force or threat of force element of first degree robbery. He claims that there was no evidence that he used force with a firearm to take Wynn's cell phone.

However, the evidence showed that (1) Wynn saw Frazier hold a gun to Dunn's head and threaten to shoot him, and later heard gunshots; (2) Frazier then approached Wynn and pushed her back into the garage; and (3) Frazier demanded Wynn's cell phone and took it from her and pushed her again into the garage.

Viewing the evidence in the light most favorable to the State, a rational trier of fact could find that the threat of force that Frazier applied to Dunn also applied to his taking of Wynn's cell phone, and Frazier actually used force against Wynn when he took her cell phone while pushing her into the garage. In addition, even if Wynn could not remember if Frazier had a gun in his hand when he pushed her, the fact that Frazier had pointed a gun at Dunn's head immediately before he spotted Wynn supports an inference that he was still armed when he pushed Wynn and took her cell phone. And Frazier certainly was armed with a gun at some point during the incident.

9

Accordingly, we hold that there was sufficient evidence to prove that Frazier used force or the threat of force when taking Wynn's cell phone while armed with a deadly weapon.

C.      YOUTHFULNESS AS A MITIGATING FACTOR AT SENTENCING

Frazier argues that the trial court erred when it failed to meaningfully consider his youthfulness as a mitigating factor to justify an exceptional downward sentence. We disagree.

1.      Legal Principles

As a general rule, a party cannot appeal a sentence within the standard range. *State v. Glant*, 13 Wn. App. 2d 356, 376, 465 P.3d 382, *review denied,* 196 Wn.2d 1021 (2020); *see also* RCW 9.94A.585(1). The rationale is that a trial court that imposes a sentence within the range set by the legislature cannot abuse its discretion as to the length of the defendant's sentence as a matter of law. *Glant*, 13 Wn. App. 2d at 376. However, a defendant may appeal when a trial court has failed to comply with the procedural requirements of the Sentencing Reform Act, 9.94A RCW, or constitutional requirements. *State v. Osman*, 157 Wn.2d 474, 481-82, 139 P.3d 334 (2006).

"While no defendant is entitled to an exceptional sentence below the standard range, every defendant is entitled to ask the trial court to consider such a sentence and to have the alternative actually considered." *State v. Grayson*, 154 Wn.2d 333, 342, 111 P.3d 1183 (2005) (emphasis omitted). Therefore, when a defendant requests an exceptional sentence, our review is limited to circumstances where either the trial court "refused to exercise discretion at all or has relied on an impermissible basis for refusing to impose an exceptional sentence below the standard range." *State v. Garcia-Martinez*, 88 Wn. App. 322, 330, 944 P.2d 1104 (1997). "A court refuses to exercise its discretion if it refuses categorically to impose an exceptional sentence below the standard range under any circumstances." *Id.* In comparison, a trial court

has exercised its discretion when it "has considered the facts and has concluded that there is no basis for an exceptional sentence . . . and the defendant may not appeal that ruling." *Id.*

"The court may impose a sentence outside the standard sentence range for an offense if it finds . . . that there are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.535[2]. Youthfulness is a mitigating factor that may justify an exceptional sentence below statutory guidelines, even when the defendant is a legal adult. *State v. O'Dell*, 183 Wn.2d 680, 689, 358 P.3d 359 (2015). A "failure to exercise discretion is itself an abuse of discretion subject to reversal." *Id.* at 697. However, "age is not a per se mitigating factor automatically entitling every youthful defendant to an exceptional sentence." *Id.* at 695.

2.  Analysis

Here, Frazier was 22 years old at the time of the November 28 and December 3 incidents and 23 years old at the time he was charged with three counts of witness tampering. And the trial court at sentencing acknowledged that it had the discretion to "impose an exceptional sentence if there's a substantial and compelling reason to do so" and that it had the "authority to go below the standard if mitigating circumstances are established by a preponderance of the evidence." 3 RP at 1246-47. But after considering Frazier's and the State's sentencing memoranda and oral arguments that highlighted Frazier's age and upbringing, the court ultimately decided that there was no basis for an exceptional sentence. Therefore, the trial court actually considered Frazier's youthfulness and request for an exceptional downward sentence and did not abuse its discretion when it sentenced him to a standard range sentence.

---

[2] RCW 9.94A.535 has been amended since the events of this case transpired. Because these amendments are not material to this case, we cite to the current version of the statute.

Accordingly, we hold that the trial court did not err when it imposed a standard range sentence after considering Frazier's youth.

CONCLUSION

We affirm Frazier's convictions and his sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.

We concur:

_____
LEE, C.J.

_____
GLASGOW, J.